## In re "Liberal Party"

*Randolph Childs*, for petitioners; *Charles D. McAvoy*, for respondents.

KNIGHT, J., October 16, 1931.—The facts are these:

1. In the municipal election, held November 5, 1929, the Liberal Party did not exist, and no candidate of that party appeared on the ballot.

2. In the general election of 1930, the name "Liberal Party" appeared on the ballot, having been placed thereon by virtue of nomination papers filed in the office of the Secretary of the Commonwealth, under the provisions of the Act of July 9, 1919, P. L. 855. On this ballot the sole representative of the "Liberal Party" was its candidate for governor, and no other candidate received any votes in this county as a candidate of the said "Liberal Party."

3. On November 21, 1930, five electors of Montgomery County, the petitioners herein, preëmpted the name "Liberal Party" by filing a preëmption in the office of the prothonotary in and for Montgomery County.

4. In the general election of 1930, no candidates were voted for to fill county offices in Montgomery County. James S. Boyd was in said election elected to the office of senator in the general assembly for the twelfth district, receiving 46,255 votes, all on the Republican ticket, and being the largest entire vote for any elected candidate in Montgomery County.

5. At said general election, John M. Hemphill, candidate for governor, received on the "Liberal" ticket 15,787 votes.

6. In the summer of 1931, the Secretary of the Commonwealth certified to the Commissioners of Montgomery County the political parties entitled by law to have their names printed on the official ballots of the primary election held September 15, 1931. Among the names so certified was that of the "Liberal Party."

7. No nominating petitions were filed by members of the Liberal Party in Montgomery County or by the preëmptors prior to the primary election held on September 15, 1931, but the ballot prepared, displayed and issued by the county commissioners contained a list of all offices, county, state and local, to be voted for at the municipal election of 1931, with a blank space under each designated office.

8. At the primary election of September 15, 1931, nine duly enrolled members of the "Liberal Party" in Montgomery County, using ballots prepared for that party, cast their votes by writing in the names of candidates of their choice for the various state and county offices to be filled.

9. The votes thus cast were counted by the return board, and no exceptions or objections being filed within the time provided by the law, the board, on September 29, 1931, certified the returns to the county commissioners.

10. By these returns, the following candidates received the highest number of votes on the "Liberal Party" ballot, for the offices following their names: Grover C. Albright and F. Joseph Roach for county commissioners; Rodger J. Maynes for county controller; John D. Ganger for sheriff; Edward S. Haws for register of wills; Andrew B. Robinson for recorder of deeds; Charles A. De Huff for clerk of the courts; Harry S. Hartzell for county treasurer; Edward F. Kane for district attorney; Teresa A. Feeney for director of the poor; Edmund C. Rezer for director of the poor; B. Rodney Vaughan for coroner; William T. Muldrew for county surveyor.

11. On October 8, 1931, the preëmptors, none of whom are now enrolled members of the "Liberal Party," presented this petition, praying that the names of the alleged nominees of said party be removed from the ballot as candidates of said party in the municipal election to be held next month.

12. The alleged nominees filed an answer, and a hearing was held on October 13, 1931, at which the foregoing facts were developed.

### Discussion

The petitioners assign several reasons in support of their petition. They pressed but one, which is the only one that it is necessary for us to consider. It involves the underlying and fundamental question: Does the "Liberal Party" exist as a political party within Montgomery County?

The second section of the Act of July 12, 1913, P. L. 719, defines what shall constitute a political party as a legal entity. It reads as follows:

"Any party or body of electors, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State; and shall nominate all its candidates for any of the offices provided for in this act, and shall elect its delegates and alternate delegates to the National convention, State committeemen, and also such party officers, including members of the National committee, as its rules provide shall be elected by a vote of the party electors, in accordance with the provisions of this act. Any party or body of electors, one of whose candidates at either the general or municipal election preceding the primary polled at least five per centum of the largest entire vote cast for any elected candidate in any county, is hereby declared to be a political party within said county; and shall nominate all its candidates for office in such county and in all political districts within said county, or of which said county forms a part, and shall elect such party officers as its rules provided shall be elected therein by a vote of the party electors, in accordance with the provisions of this act."

A careful reading of the above section shows that it was the legislative intent to draw a distinction between a political party in the state and a political party in a county, and this has been the construction placed upon the section by the courts of the Commonwealth: Campbell's Nomination, 46 Pa.

C. C. 457; Forster's Nomination Paper, 41 Pa. C. C. 696, an opinion by the attorney general; Miller *v.* Secretary of Commonwealth, 1 D. & C. 40.

It follows then that a political body may have the legal status of a "party" in the state and not have that status in a county, and a county may have a legal "political party" created by local conditions which may have no statewide authority or existence. That the "Liberal Party" is a legal existing political party in the state at large is conceded, and, therefore, the Secretary of the Commonwealth was correct in certifying to the Commissioners of Montgomery County that the "Liberal Party" was entitled to a separate ballot, through which its enrolled electors in the county could vote for every statewide office. The petitioners concede this, but they contend that the "Liberal Party" does not exist as a legal political entity in Montgomery, and that, therefore, these same electors had no power to nominate candidates for county offices on the "Liberal Party" ballot.

Let us turn again to the second section of the Act of 1913, supra, the second paragraph of which defines a party within a county. We repeat the wording here:

"Any party or body of electors, one of whose candidates at either the general or municipal election preceding the primary polled at least five per centum of the largest entire vote cast for any elected candidate in any county, is hereby declared to be a political party within said county; and shall nominate all its candidates for office in such county and in all political districts within said county, or of which said county forms a part, and shall elect such party officers as its rules provided shall be elected therein by a vote of the party electors, in accordance with the provisions of this act."

It will be noted that to entitle a body of electors to the status of a party in a county that body must have polled at least five per centum of the largest entire vote cast at the preceding general or municipal election for any elected candidate within said county. If we construe this language as applying to county offices only, and the largest entire vote for a county office is to be taken as the standard, then the "Liberal Party" does not exist in Montgomery, for no county offices were filled in 1930. Manifestly, this was not the intention of the legislature, otherwise it would not have used the words "general or municipal election" in the paragraph. See, also, Miller *v.* Secretary of Commonwealth, 1 D. & C. 40.

A state senator for the twelfth district, comprising Montgomery County, was elected at the general election of 1930. The "Liberal Party" candidate for governor at that election polled on the "Liberal" ticket more than five per centum of the entire vote cast for the elected state senator.

The question then narrows down to the meaning of the words "one of whose candidates . . . polled at least five per centum of the largest entire vote cast for any elected candidate in any [this] county."

If we construe this to mean that five per centum of the votes received by Senator Boyd must have been cast for him on the "Liberal" ticket, then the "Liberal Party" does not exist in Montgomery County, for Senator Boyd received no votes on that ticket. We view this, however, as a strained, unnatural and unreasonable construction to place upon the act. The words "one of whose candidates" certainly means any candidate of the "Liberal Party," whether for state senator or any other office.

Again, it cannot be seriously contended that the determining vote of "five per centum" must have been cast on the "Liberal" ticket in favor of the elected candidate, for if such were true, no minority party could exist. If we construe the paragraph to provide that that "Liberal Party" must have cast in its party

square five per centum of the entire number of votes polled for the office of state senator in 1930, again we run contrary to the plain meaning of the words, "cast for any elected candidate." The act speaks of the candidate and not of the office.

The Act of July 9, 1897, P. L. 223, provides that the number of electors signing a nomination paper "shall be at least two per centum of the largest entire vote for any officer elected at the last preceding election."

Construing this act, the Common Pleas of Clinton County, Whitehead, P. J., in Hamilton's Nomination Papers, 7 D. & C. 523, held the words meant the highest vote given to the officer elected, and did not mean the total vote cast for the office.

As we construe the second paragraph of section two of the Act of 1913, supra, the legislature designated the largest entire vote for any elected candidate within the county as the standard or criterion, and when any body of citizens, voting under a party name, polls within the county for any of its candidates a number of votes equal to five per centum of said largest entire number cast for an elected candidate in the county, said body of citizens become a legal political party within the county, entitled to all the rights and privileges of such a party.

Applying this interpretation to the facts before us, we find that Senator Boyd had the largest entire vote cast for any elected candidate in Montgomery County at the general election of 1930, and that John M. Hemphill, a "Liberal Party" candidate for governor at that election, polled in this county, on the "Liberal Party" ticket, more than five per centum of the number of votes cast for Senator Boyd. Thus the "Liberal Party" became a duly constituted and existing political party within Montgomery County, entitled, under the law, to nominate candidates for all offices in the county, and in all political districts thereof.

Since no nominating petitions were filed for places on the "Liberal Party" ticket in Montgomery County, the duly enrolled electors of that party could select their nominees by writing names upon the blank spaces on the ballot under each designated office. On the uncontested returns certified by the return board, the candidates set forth in finding of fact No. 10 were elected as nominees for the respective offices set after their names, and are entitled to have their names appear as nominees of the "Liberal Party" on the official ballot at the general election in November next.

Some question has been raised as to the right of an elector to vote for any person whose name is not printed on the ballot. Section five of the Act of 1913, supra, provides, inter alia: "Under each group of names of candidates shall be printed as many blank spaces . . . as there are to be candidates nominated for such office." Again, in the same section, it is provided: "The voter may designate his choice as is indicated by the instructions shown on the form of ballot above set forth." Referring to the form set forth in the act (which the county commissioners have followed in the present case), we find at the head of the ballot the following instructions: "Make a cross (X) in the square to the right of each candidate for whom you wish to vote. If you desire to vote for a person whose name is not on the ballot, write or paste his name in the blank space provided for that purpose."

The Act of 1913, supra, as to the form of ballot and method of voting, followed the Uniform Primaries Act of February 17, 1906, P. L. 36. In construing this latter act on the exact question now before us, the Supreme Court, in Henderson's Case, 222 Pa. 307, flatly decided that nominations could be made by writing in the name of the candidate.

Just a word in reference to the standing of the alleged preëmptors of the "Liberal Party" in Montgomery County. If the "Liberal Party" was a legal existing political party in this county after the general election of 1930, then the name could not be preëmpted by five citizens under the Act of July 9, 1919, P. L. 855, any more than five citizens could preëmpt the name Democratic or Republican. Assuming that the name could be preëmpted, still the preëmptors in the present case have no standing as such, for they filed no nomination papers before the primaries, and cannot file them now.

There exists a serious question as to our jurisdiction in the case, and as to the procedure of the petitioners. We are not familiar with any provision of the election law which warrants a petition of this character; a bill in equity would have been a more appropriate remedy. The county commissioners were not made parties to the proceeding, and it is somewhat difficult to see how any decree entered on the petition could affect the printing of the ballots. However, we have met the issue on the merits, and we mention the questions of procedure and jurisdiction simply in order that this case may not be cited as containing our unqualified approval of either.

And now, October 16, 1931, the petition is dismissed, at the cost of the petitioners.

From Aaron S. Swartz, Jr., Norristown, Pa.